**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MICHAEL GOOD,

        Plaintiff,

vs.                  Case No. 3:11-cv-384-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Michael Good ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "mental illness, illiteracy, learning problems and migraines." Transcript of Administrative Proceedings (Doc. No. 13; "Tr."), filed August 15, 2011, at 92. On June 30, 2008, Plaintiff filed applications for DIB and SSI, alleging an onset date of November 30, 2007. Tr. at 160-62 (SSI), 163-66 (DIB). Plaintiff's applications were denied initially, Tr. at 93-94, 97-98, and were denied upon reconsideration, Tr. at 101-02, 103-04.

On January 6, 2010, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert testified. Tr. at 26-87. At the time of the hearing, Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed August 16, 2011; Reference Order (Doc. No. 16), entered August 17, 2011.

was forty-six (46) years old.[2]  Tr. at 39-40.  The ALJ issued a written Decision on February 20, 2010, finding Plaintiff not disabled through the date of the Decision.  Tr. at 12-21.  On February 22, 2011, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.  On April 21, 2011, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises one issue on appeal: whether "[t]he Commissioner erred by finding that the Plaintiff did not meet listing 12.05 of the Social Security Regulations Listing of Impairments."  Memorandum in Opposition to the Commissioner's Decision (Doc. No. 24; "Pl.'s Mem."), filed December 30, 2011, at 2.  Responding, Defendant argues that "Plaintiff failed to meet his burden of establishing presumptive disability under Listing 12.05C," and that the Commissioner's decision is supported by substantial evidence.  Memorandum in Support of the Commissioner's Decision (Doc. No. 25; "Def.'s Mem."), filed February 16, 2012, at 5, 9.  After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

---

[2]  At the hearing before the ALJ, Plaintiff indicated that he was born on September 9, 1963 and he was about "forty" years old.  Tr. at 39-40.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the sequential inquiry, but due to the ALJ's finding at step four, the ALJ was not required to, nor did he, proceed to step five. See Tr. at 14-21. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 30, 2007, the alleged onset date." Tr. at 14 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: low back pain and learning disorder." Tr. at 14 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted).

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined Plaintiff "has the residual functional capacity [("RFC")] to perform the full range of light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b); thus, is able to lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk 6 hours; and push/pull without limitation within the weights given." Tr. at 16 (emphasis omitted). The ALJ further determined that Plaintiff "has moderate restriction in concentration, persistence, or pace, but can still understand, remember, and carry out simple instructions." Tr. at 16 (emphasis omitted). At step four, the ALJ found Plaintiff "is capable of performing past relevant work as an assembly line worker in the furniture manufacturing industry. This work does not require the performance of work-related activities precluded by [ Plaintiff's RFC]." Tr. at 20 (emphasis omitted). Therefore, the ALJ concluded Plaintiff "has not been under a disability . . . from November 30, 2007 through the date of th[e D]ecision." Tr. at 21 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff's issue on appeal focuses on the ALJ's finding that Plaintiff does not meet Listing 12.05 of the Regulations. Pl.'s Mem. at 6. Specifically, Plaintiff argues the ALJ erred by discrediting Plaintiff's IQ scores that were documented by Louis Legum, Ph.D., a licensed psychologist, in a report dated September 9, 2008. See id. at 7-8; see also Tr. at 261-66. Plaintiff contends that "[t]here is nothing in [Dr. Legum's] report to indicate that the IQ tests were invalid or inconsistent with [ Plaintiff's] educational history," and "Plaintiff posits that his work history is not inconsistent with his IQ scores, as his past work, as he performed it, generally did not require verbal skills." Pl.'s Mem. at 7.

### A. Dr. Legum's Opinion

On September 2, 2008, Dr. Legum examined Plaintiff and made the following observations. See Tr. at 261-66 (report dated September 9, 2008). Plaintiff states that he does not have "any difficulties in taking care of his basic [activities of daily living]." Tr. at 265. According to Plaintiff, "he retains a valid driver's license and uses his mother's vehicle to

travel to stores and the like where he can make monetary transactions." Tr. at 262. Plaintiff "reports being able to cook and make use of laundry appliances, as well as some limited banking service capabilities." Tr. at 265. "In his spare time, [ Plaintiff] indicates that he will go crabbing with a friend." Tr. at 262. Plaintiff "does not indicate that he does any reading or that he uses a computer." Tr. at 262. Regarding his educational history, Plaintiff "indicates he received a certificate of completion for his having completed twelve years of school" even though "he was in special education classes." Tr. at 262. Dr. Legum documented Plaintiff's speech as "lucid and articulate, albeit at times somewhat halting in pace." Tr. at 263. Dr. Legum also noted that Plaintiff can name the President and the capital of the United States, "but cannot speak to any current events in the news." Tr. at 264.

During the examination, Dr. Legum administered a Wechsler Adult Intelligence Scale - Third Edition to determine Plaintiff's IQ scores. Tr. at 261. Plaintiff received a full scale IQ of 73, a performance IQ of 90, and a verbal IQ of 63. Tr. at 264. Dr. Legum recognized that these scores "reflect a statistically significant PIQ-VIQ split," wherein Plaintiff "is found to have normative abilities on a cluster of subtests which assess visual motor capabilities;" but, Plaintiff "demonstrates markedly diminished verbal comprehension skills." Tr. at 264. Dr. Legum diagnosed Plaintiff with "Learning Disorder NOS;" and "Borderline Intellectual Functioning." Tr. at 265.

Dr. Legum concluded that Plaintiff "is viewed as competent to manage his financial affairs." Tr. at 265. He opined that Plaintiff is "entirely capable of gainful employment as long as reading or writing skills are not a part of the job requirements." Tr. at 265.

### B. ALJ's Decision

After summarizing Dr. Legum's opinion, the ALJ assigned it "great weight" with two (2) exceptions: (1) "little weight" was given to the documented IQ scores; and (2) "very little weight" was given to Dr. Legum's conclusion that Plaintiff "was entirely capable of gainful employment <u>as long as reading and writing skills are not a part of the job requirements</u>." Tr. at 19 (emphasis added).

The ALJ assigned "little weight" to Plaintiff's IQ scores because, according to the ALJ, Plaintiff "has demonstrated through his daily activities and previous work that he has the functional capacity to perform beyond the level which the documented IQ scores infer." Tr. at 16; <u>see also</u> Tr. at 19. The ALJ noted Plaintiff's testimony that he "can take care of personal grooming, including showering, brushing his teeth and dressing." Tr. at 17; <u>see also</u> Tr. at 20. The ALJ recognized that Plaintiff "even admitted that he cooks once in a while . . . things like hot dogs." Tr. at 17; <u>see also</u> Tr. at 20. The ALJ observed that Plaintiff's "earning records demonstrate that despite his alleged inability to read or write, he has been able to work at substantial gainful activity levels for a substantial amount of years prior to his alleged onset date." Tr. at 20 (citing Tr. at 169-84). Additionally, the ALJ noted that Plaintiff "earned admirable grades, consisting of A's and B's during his 1978-1979 school year. His grades gradually decline[d] thereafter, but generally remained passing . . . until 1981 wherein he impliedly stopped making any effort." Tr. at 18. The ALJ explained that Plaintiff's "consecutive years of passing grades show[] that he is capable of some level o[f] reading and/or writing and is therefore at least capable of performing simple, routine work as assessed in the [RFC]." Tr. at 18. Moreover, the ALJ noted that Plaintiff "has not even

undergone regular/consistent mental health treatment, hospitalization, or suicidal/homicidal ideation." Tr. at 18 (citing Tr. at 264-66, 296-309).

Regarding other opinion evidence in the record, the ALJ assigned "the greatest weight" to the opinions of Jane Cormier, Ph.D. and Sharon Ames-Dennard, Ph.D., who both opined that Plaintiff has some limitations, but those limitations do not prevent him from "performing simple, routine, repetitive-type tasks." Tr. at 18 (citing Tr. at 267-84, 292-309). Plaintiff does not take issue with the ALJ's assignment of weight to these opinions.

The ALJ also discredited Plaintiff's testimony that he cannot read or write. Tr. at 18. The ALJ reasoned "the evidence of record and [Plaintiff's] past activities support otherwise." Tr. at 18. Plaintiff does not raise any issue related to the ALJ's credibility finding.

### C. Legal Framework

Listing 12.05 describes the condition of Mental Retardation and the requirements at issue:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. This listing has been interpreted as requiring three elements–"a claimant must at least (1) have significantly subaverage general

intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); see Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 766 (11th Cir. 2012) (unpublished) (reaffirming that "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria").

"Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted). However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id.; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986).

### D. Analysis

The ALJ's reasoning for providing little weight to Plaintiff's IQ scores is supported by substantial evidence. The medical opinions in the record indicate that although Plaintiff has some limitations, his limitations do not prevent him from performing work consistent with the RFC. Plaintiff has no problems with taking care of his personal needs on a daily basis. His alleged inability to read and write did not prevent him from working in the past. His educational history reflects that he must have had some ability to read and write to complete his years of schooling. All of these reasons combined support the ALJ's finding that

Plaintiff's IQ scores are inconsistent with his daily activities and previous work, as well as showing that Plaintiff "has the functional capacity to perform beyond the level which the documented IQ scores infer." Tr. at 16; see, e.g., Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (unpublished) (affirming ALJ's decision to deny benefits, in part, because the plaintiff "was never diagnosed with mental retardation, only borderline intellectual functioning"; he "did well in special education classes and was able to hold several jobs"; he "could dress and bathe himself, take care of his personal needs, and manage money; and he "could read, communicate effectively, and do simply math"). Additionally, it has been recognized that borderline intellectual functioning, which diagnosis has been given to Plaintiff here, "is mutually exclusive of mental retardation." Jordan, 470 F. App'x at 768-69 (citations omitted).

Upon review of the ALJ's Decision and the record as a whole, the undersigned finds that the ALJ's decision to discredit Plaintiff's IQ scores is supported by substantial evidence, as is the finding that Plaintiff does not meet the listing at issue.

## V. Conclusion

After a thorough review of the record, the undersigned is convinced that the Commissioner's final decision is supported by substantial evidence. After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

    2.    The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 7, 2012.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

jld
Copies to:
Counsel of record